UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN L. WESLOWSKI,

                              Plaintiff,

          -v-

PATRICIA ZUGIBE, JEFFREY J. FORTUNATO,
and COUNTY OF ROCKLAND,

                              Defendants.

Case No. 12-CV-8755 (KMK)

OPINION AND ORDER

Appearances:

John Louis Weslowski, Esq.
Schenectady, NY
*Pro se Plaintiff*

Robert Benjamin Weissman, Esq.
Saretsky Katz Dranoff & Glass LLP
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Plaintiff John L. Weslowski ("Plaintiff") brings this Action against defendants Patricia

Zugibe ("Zugibe") and Jeffrey J. Fortunato ("Fortunato") in their individual and official

capacities, and against the County of Rockland (the "County") (collectively, "Defendants"),

seeking relief under federal and state law for claims arising out of Plaintiff's allegedly wrongful

termination in the Fall of 2009.  Before the Court is Defendants' Motion To Dismiss the

Amended Complaint.  (Dkt. No. 40.)  For the reasons stated below, the Court grants Defendants'

Motion.

I.  Background

A.  Factual History

The Court assumes familiarity with its March 31, 2014 Opinion and the allegations

described therein.  *See Weslowski v. Zugibe*, 14 F. Supp. 3d 295 (S.D.N.Y. 2014).  The following

allegations are derived from Plaintiff's Amended Complaint, and are treated as true for purposes

of resolving the instant Motion.

In June 2003, Plaintiff began working for the County as a full-time Assistant County

Attorney.  (*See* Am. Compl. ¶ 9 (Dkt. No. 35).)  Approximately six months later, Plaintiff was

promoted to Senior Assistant County Attorney, a position he held until the events giving rise to

this Action.  (*See id.* ¶¶ 11–12.)  In that position, Plaintiff worked under the supervision of

Zugibe, the County Attorney, and Fortunato, the Deputy County Attorney.  (*See id.* ¶¶ 3–4.)  At

some point before 2009, Zugibe and Fortunato came to know that Plaintiff is gay.  (*See id.*

¶ 25(a).)  Later, in May 2009, Zugibe and Fortunato "reprimanded" Plaintiff for his March 2009

violations of the County's computer-usage policies (the "Computer Use Policy")—namely,

Plaintiff's "use of the computer and Internet access provided by the County" to view what

Plaintiff describes as "perfectly legal gay male sexual content."  (*Id.* ¶¶ 29(d), 29(d)(1).)

In mid-2009, Plaintiff was assigned to review an application for the disbursement of

County funds pursuant to a federal-government-funded program.  (*See id.* ¶¶ 23(a)–(e).)  During

his review of the proposed contract, Plaintiff determined, among other things, that "the proposed

contractor was itself neither an incorporated entity, nor any other legal entity under New York

law, nor was the 'President' [of the entity] authorized to act on behalf of anyone but himself."

(*Id.* ¶ 23(f).)  Plaintiff thereafter informed his superiors and the proposed contractor that he

would refuse to approve the proposed contract on these grounds, and he made known his general intention to prevent the County from agreeing to the proposed contract.  (*See id.* ¶ 23(i).)[1]

In response, the "President" of the proposed contractor, "frustrated by the unexpected administrative obstacle," "made clear to [Defendants] the political clout that he and his highly visible unincorporated association could wield during . . . a fiercely and closely contested [local] election."  (*Id.* ¶ 24.)  Subsequently, in August 2009, Zugibe and Fortunato decided to terminate Plaintiff and "deliberately and maliciously" took steps to gather evidence sufficient to establish cause for the termination—including emails, work documents, and evidence of his March 2009 Computer Use Policy violations—while "conceal[ing] those steps from [Plaintiff]."  (*See id.* ¶¶ 29(b)–(c).)  Additionally, on October 16, 2009, Zugibe instructed Plaintiff to transfer the proposed-contract assignment to a colleague, who revised the contract and took steps to have it executed.  (*See id.* ¶¶ 26(a), 26(b)(1).)  The "President" of the proposed contractor signed the contract on October 26, 2009, and the County signed it on the following day.  (*See id.* ¶ 28.)

On November 24, 2009, Zugibe and Fortunato "summoned [Plaintiff] into Zugibe's office," "told [Plaintiff] that he would not be invited to be 'part of the team,'" and informed him "that the only question was whether [Zugibe] would dismiss [Plaintiff] for cause at that time or . . . allow [Plaintiff] to voluntarily resign."  (*Id.* ¶¶ 30, 30(a).)  At the meeting, Zugibe specifically referenced Plaintiff's refusal to approve the proposed contract, his March 2009 violations of the Computer Use Policy, and other examples of his allegedly sub-par performance.  (*See id.* ¶ 30(b).)  Furthermore, to induce Plaintiff to resign voluntarily, Fortunato informed Plaintiff that he would forfeit his right to thousands of dollars in accumulated, unused vacation

---

[1] Plaintiff's concern was that the "President" did not have authority to sign the contract on behalf of "each and every unnamed member of the unincorporated association," meaning the contract would be non-binding.  (Am. Compl. ¶ 23(i).)

and longevity leave if he were terminated for cause, and "emphasiz[ed]" that proceedings

concerning a termination for cause "would be embarrassing for [Plaintiff]." (*See id.* ¶ 30(c).)

Plaintiff alleges that Defendants "promised [him] that he would not lose that unused accumulated

leave, but rather that he would be paid that leave in full" if he voluntarily resigned. (*Id.* ¶ 38(a).)

In reliance on that promise, Plaintiff agreed to resign, and "by the end of the day" on November

24, 2009, he "delivered his signed resignation letter to Fortunato," even though "it was not [his]

intention to voluntarily resign." (*Id.* ¶ 30(e); Decl. of Robert B. Weissman ("Weissman Decl.")

Ex. B ("Resignation Letter") (Dkt. No. 41).)[2]

       With Zugibe's consent, and per the terms of his resignation letter, Plaintiff's resignation

did not take effect until December 4, 2009. (*See* Am. Compl. ¶ 30(d); Resignation Letter).) At

some time on or after his last day, the "County paid [Plaintiff] for . . . 440.00" unused leave

hours. (*See* Am. Compl. ¶ 31(b)(3).) But, according to Plaintiff, he had accumulated at least

663.50 hours.[3] (*See id.*) Thus, at Plaintiff's wage of $43.527 per hour, Plaintiff alleges that

---

[2] Because Plaintiff's resignation letter was referenced in, and is integral to, the Complaint, the Court may consider it in deciding the Motion To Dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (noting that, in resolving a motion to dismiss, a court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference," and any "document . . . not incorporated by reference . . . where the complaint relies heavily upon its terms and effect, . . . render[ing] the document integral to the complaint" (internal quotation marks omitted)); *see also Done v. HSBC Bank USA*, No. 09-CV-4878, 2010 WL 3824142, at *2 (E.D.N.Y. Sept. 23, 2010) ("In reviewing a motion to dismiss, a court may consider, inter alia, (1) documents that are incorporated by reference into the complaint, and (2) documents that, even if not incorporated by reference, the defendant has notice of and that are integral to the complaint." (italics and internal quotation marks omitted)).

[3] Plaintiff also alleges that he may have accumulated as many as 945.50 total unpaid-leave hours, the "permissible maximum" under his employment contract. (*See* Am. Compl. ¶ 31(b)(3).)

Defendants refused to pay him $9,728.28 of the money promised to him on November 24, 2009, when Plaintiff agreed to resign in reliance on that promise.  (*See id.*)

B.  Plaintiff's First Complaint

Plaintiff filed his first Complaint on December 3, 2012.  (*See* Compl. (Dkt. No. 1).)  The Complaint included five causes of action arising under federal law, including three causes of action under 42 U.S.C. § 1983, alleging that Defendants' secretive plan to terminate Plaintiff, and the decision to terminate him based, in part, on his using County computer and Internet access to view "gay male sexual content," (*id.* ¶ 29(d)(1)), violated his First Amendment rights to "freedom of speech, freedom of expression, and freedom of association," (*see id.* ¶ 35), his Fourteenth Amendment right to Equal Protection, (*see id.* ¶¶ 32–33), and his Fourteenth Amendment right to procedural due process, (*see id.* ¶ 36); one cause of action under 42 U.S.C. § 1985(3), alleging that Defendants conspired to deprive Plaintiff of those rights, (*see id.* ¶ 37); and one cause of action under 31 U.S.C. § 3730(h) of the False Claims Act ("FCA"), alleging that Defendants' decision to terminate Plaintiff constituted unlawful retaliation in response to his attempt to prevent an FCA violation, (*see id.* ¶¶ 21–30).  The Complaint also included four causes of action arising under state law, namely one cause of action alleging that Defendants' decision to terminate Plaintiff based on his sexual orientation violated N.Y. Executive Law § 296(1)(a), (*see id.* ¶ 34); one cause of action alleging that Plaintiff's termination and the refusal to reimburse him for all of his unused vacation and longevity leave breached his employment contract, (*see id.* ¶ 31); one cause of action alleging that Defendants' refusal to reimburse Plaintiff for all of his unused vacation and longevity leave breached an enforceable promise under the theory of promissory estoppel, (*see id.* ¶ 38); and one cause of action similarly alleging

that the refusal to reimburse Plaintiff for his unused vacation and longevity leave, as well as his unused sick leave, constituted unjust enrichment, (*see id.* ¶¶ 39–40).

    C.  Amended Complaint

On March 31, 2014, the Court granted Defendants' Motion To Dismiss in its entirety, and gave Plaintiff 30 days to file an amended complaint.  *See Weslowski*, 14 F. Supp. 3d at 322. Plaintiff filed his Amended Complaint on April 30, 2014.  (Dkt. No. 35.)  The Amended Complaint contains the same allegations and claims as those in Plaintiff's first Complaint, as well as additional allegations and arguments that Plaintiff marked as "ADDITIONS TO THE ORIGINAL COMPLAINT."  (*See* Am. Compl. 1.)

At the beginning of his Amended Complaint, Plaintiff added a section labeled "BASIC GUIDELINES FOR CONSTRUING THIS FIRST AMENDED COMPLAINT."  (*Id.* at 2.)[4]  The section consists, in primary part, of repackaged arguments that Plaintiff previously made in response to Defendants' first Motion To Dismiss.  Within it, Plaintiff makes the following points:  First, Plaintiff makes clear that he intends that every one of his allegations be "incorporated by reference" into every one of his claims, and that he reasserts every claim that he made in his first Complaint.  (*Id.* at 2–3.)  Second, Plaintiff claims that his statute-of-limitations-related arguments—namely (a) the contention that his claims should be tolled because of Congress's amendment of the FCA and by operation of the Wartime Suspension Limitations Act, and (b) an argument that Zugibe and Fortunato "possessed no authority" to terminate Plaintiff's employment on November 24, 2009, meaning the statute of limitations could not have been triggered on that date— render his claims timely.  (*Id.* at 3–4.)  Third, Plaintiff argues that

---

[4] Because the paragraphs in this section are numbered independently from the rest of the Amended Complaint, the Court refers to page numbers in this section, rather than paragraph numbers, for clarity.

Defendants' withholding of his accumulated leave constitutes retaliation because it is sufficiently related to his employment.  (*Id.*)  Fourth, Plaintiff contends that he acted to prevent an "actual fraud," as opposed to what "Plaintiff merely reasonably or in good faith merely believed to be fraud," under the FCA.  (*Id.* at 4–5.)  Fifth, Plaintiff notes that he is alleging a "'*Lawrence v. Texas*'" cause of action, as discussed below, claiming that Defendants violated his "decisional autonomy/'liberty' interests."  (*Id.* at 5.)  Sixth, Plaintiff argues that even if he had he brought an Article 78 proceeding pursuant to N.Y. C.P.L.R. § 7801 et seq., it could not have resulted in full compensation for his losses, and therefore he was not otherwise afforded due process.  (*Id.* at 5–6.)

Plaintiff also makes new allegations regarding the County's Computer Use Policy.  He alleges that the County had no "rational basis" for determining that "adult/sexually explicit" material was any worse that other listed "restricted categories," and that Defendants' conduct was motivated by the fact that "Plaintiff is a gay male who accessed gay male sites."  (*Id.* at 7–9; *see also id.* ¶ 32A(4)(a).)  Plaintiff also alleges that the Computer Use Policy was in effect at all relevant times during his employment, and governed all employees of the County, and yet was never "consistently and evenhandedly applied or enforced" against "similarly situated" employees who accessed restricted content, including similarly explicit content.  (*Id.* at 6–9.)[5] Plaintiff provides the initials of sixteen such similarly situated individuals, each of whom he alleges used County computers to access content in "many, if not nearly all, of the . . . 'restricted categories' repeatedly and intentionally, without any adverse employment consequence."  (*Id.*

---

[5] Plaintiff includes passages from the Computer Use Policy in his Amended Complaint, which he refers to as the "'Code of Practice for Specific Activities.'"  (Am. Compl. ¶ 32A.)

¶ 32A(4)(b)–(c.).)[6]  Relatedly, Plaintiff alleges that his disciplinary record was "superlative," and "at least comparable to, and likely better than," the disciplinary records of the allegedly similarly situated employees, and that he was at least as competent and effective an attorney as the allegedly similarly situated attorneys.  (*Id.* ¶ 32C.)

Finally, Plaintiff adds a tenth cause of action labeled as "DECISIONAL AUTONOMY/'LIBERTY' INTERESTS UNDER *LAWRENCE v TEXAS*," which Plaintiff says he intended to allege in his initial Complaint.  (*Id.* at 5, 60.)  Plaintiff contends, in relevant part, that because the Computer Use Policy was not consistently enforced, Defendants "established a right" to violate it, which became one of the "perks" of working for the County.  (*Id.* ¶¶ 42–43.) Plaintiff therefore alleges that he had a "de facto right to use" the County's computers to "access, store, and send from otherwise prohibited sites . . . for otherwise prohibited purposes" without any adverse employment consequences.  (*Id.* ¶ 43.)  Plaintiff contends that this right, once created, cannot not be infringed because it falls within the "'realm of personal liberty which the government may not enter.'"  (*Id.* ¶ 44 (citing *Lawrence v. Texas*, 539 U.S. 558, 578 (2003)).)[7]

Of note, Plaintiff also includes a number of substantive arguments in footnotes to his Opposition, some of which are quite colorful.  Putting aside the fact that the footnotes are not formatted in accordance with the Court's individual rules, the Court also notes that, because the arguments appear only in footnotes, they are not properly raised, and the Court is under no obligation to consider them.  *See United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993)

---

[6] Plaintiff also alleges that some similarly situated employees committed "much more serious" violations of the Computer Use Policy.  (*Id.* ¶ 32(a)).  The Court discusses this allegation in further detail below.

[7] The only other new allegation in Plaintiffs' Amended Complaint is Plaintiff's specific reference to "accumulated leave" as a property right as part of his due process claim.  (*Id.* ¶ 36.)

("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review."); *Gramercy Advisors, LLC v. Ripley*, No. 13-CV-9070, 2014 WL 5847444, at *2 (S.D.N.Y. Nov. 12, 2014) ("[C]ourts generally do not consider an argument mentioned only in a footnote to be adequately raised."); *Rowley v. City of New York*, No. 00-CV-1793, 2005 WL 2429514, at *6 (S.D.N.Y. Sept. 30, 2005) ("[A]n argument raised in a footnote . . . may not be properly considered."); *People United for Children, Inc. v. City of New York,* 108 F. Supp. 2d 275, 301 (S.D.N.Y. 2000) (excusing the plaintiff's failure to respond to an argument made by defendant's argument in a footnote because "it might have been overlooked").

### D.  Subsequent History

Defendants requested a pre-motion conference in a letter filed on May 20, 2014, (Dkt. No. 36), to which Plaintiff replied on May 27, 2014, (Dkt. No. 38).  The Court held the conference on July 11, 2014, at which it set a briefing schedule for Defendants' Motion To Dismiss.  (*See* Dkt. (minute entry for July 11, 2014).)  Defendants filed their Motion To Dismiss and associated materials on August 11 and 12, 2014, (Dkt. Nos. 40–41, 45), Plaintiff filed his Opposition on September 11, 2014, (Dkt. No. 48), and Defendants filed their Reply on September 22, 2014, (Dkt. No. 49).

## II.  Discussion

### A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief."  *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 68 (2d Cir. 2014).  In reviewing a complaint, the Court "accept[s] all factual allegations as true and draw[s] every reasonable inference from those facts in the plaintiff's

favor." *In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 133 (2d Cir. 2014) (internal quotation marks omitted).  Moreover, along with the Amended Complaint itself, the Court "may consider . . . any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014) (internal quotation marks omitted), *cert. denied*, 135 S. Ct. 715 (2014).

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (third alteration in original) (citations omitted).  Instead, the Supreme Court has emphasized that the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

The Court notes that Plaintiff is proceeding pro se.  In general, this would require the Court to construe his pleadings liberally with "special solicitude," and to interpret them to raise the strongest claims that they suggest.  *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted).  However, because Plaintiff is a licensed attorney, the liberal-construction rule does not necessarily apply to his pleadings.  *See Larsen v. JBC Legal Grp., P.C.*, 533 F. Supp. 2d 290, 295 n.2 (E.D.N.Y. 2008) (declining to apply "the liberality normally accorded pro se litigants" and holding the pro se plaintiff "to the same standards as other attorneys appearing before the court" (italics and internal quotation marks omitted)); *see also Sembler v. Attention Funding Trust*, No. 07-CV-2493, 2009 WL 2883049, at *1 (E.D.N.Y. Sept. 3, 2009) (noting that because "[p]laintiff [was] an admitted attorney[,] . . . . the Court [did] not construe plaintiff's pleadings liberally to raise the strongest arguments they suggest" (internal quotation marks omitted)).

B.  Analysis

1.  Law of the Case

Under the law of the case doctrine, "a decision on an issue of law becomes binding precedent in subsequent stages of the same litigation."  *Brentwood Pain & Rehab. Servs., P.C. v. Allstate Ins. Co.,* 508 F. Supp. 2d 278, 288 (S.D.N.Y. 2007) (citing *In re PCH Assocs.*, 949 F.3d 585, 592 (2d Cir. 1991)); *see also United States v. Plugh*, 648 F.3d 118, 123 (2d Cir. 2011) (explaining that "[a]s a general matter . . . [a court should] adhere to its own decision at an earlier stage of the litigation" (internal quotation marks omitted)).  This doctrine "only forecloses consideration of issues that have already been decided," *Snoussi v. Bivona*, No. 05-CV-3133, 2010 WL 3924255, at *6 (E.D.N.Y. Feb. 17, 2010) (internal quotation marks omitted), *adopted by* 2010 WL 3924683 (E.D.N.Y. Sept. 29, 2010), and is "discretionary" such that it "does not

11

limit a court's power to reconsider its own decisions prior to final judgment," *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 8 (2d Cir. 1996) (internal quotation marks omitted). However, a court should be "loathe to revisit an earlier decision in the absence of extraordinary circumstances," *N. River Ins. Co. v. Phila. Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995) (internal quotation marks omitted); *see also Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.,* 652 F.3d 277, 288 (2d Cir. 2011) (noting that "there is a strong presumption against amendment of prior orders"), namely "cogent or compelling reasons not to [follow the earlier decision], such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error to prevent manifest injustice," *Bellezza v. Holland*, No. 09-CV-8434, 2011 WL 2848141, at *3 (S.D.N.Y. July 12, 2011) (internal quotation marks omitted); *see also Plugh*, 648 F.3d at 123–24 (same); *cf. Benavidez v. Piramides Mayas Inc.*, No. 09-CV-5076, 2013 WL 2357527, at *3–4 (S.D.N.Y. May 23, 2013) (explaining that the court "found a compelling reason" to vacate its prior order under this standard, namely "[m]anifest injustice"), *reconsideration denied in part* 2013 WL 2357527 (S.D.N.Y. May 24, 2013); *Pineiro v. Pension Benefit Guar. Corp.*, No. 96-CV-7392, 1999 WL 195131, at *2 (S.D.N.Y. Apr. 7, 1999) (noting that "the amended complaint and its attached material have prompted a fresh look at the statute" at issue).

The mere filing of an Amended Complaint does not entitle Plaintiff to relitigate his claims absent new factual allegations. Because the Amended Complaint, as outlined above, is in large part identical to Plaintiffs' first Complaint, the law of the case doctrine counsels against reconsideration of the Court's March 31, 2014 dismissal of the first Complaint. *See State Farm Mut. Auto. Ins. Co. v. Mallela*, No. 00-CV-4923, 2002 WL 31946762, at *8 (E.D.N.Y. Nov. 21, 2001) (applying law of the case doctrine where "plaintiff's [c]omplaint [was] very similar to

[the] plaintiff's [p]rior [c]omplaint").  Plaintiff's arguments to the contrary, while blunt and

punchy, do not raise any "extraordinary circumstances" that suggest otherwise.  *See Ritani, LLC*

*v. Aghjayan*, 970 F. Supp. 2d 232, 263 (S.D.N.Y. 2013) (denying motion for reconsideration

because of lack of extraordinary circumstances); *Selah v. N.Y.S. Docs Comm'r*, No. 04-CV-3273,

2006 WL 2051402, at *2 (S.D.N.Y. July 25, 2006) (dismissing amended complaint because the

plaintiff failed to make a showing indicating why the court should depart from law of the case).[8]

However, to the extent that Plaintiff has offered new claims or factual allegations that arguably

address the deficiencies the Court previously identified, the Court will consider those claims

anew.  *See Kregler v. City of New York*, 821 F. Supp. 2d 651, 658 (S.D.N.Y. 2011) (finding law

of the case doctrine inapplicable because the plaintiff made new factual allegations and advanced

a new central theory of liability); *Bellezza*, 2011 WL 2848141, at *3 ("The law of the case

doctrine does not control here, however, as the [a]mended [c]omplaint alleges materially

different and more detailed claims than the original [c]omplaint . . . ."); *Snoussi*, 2010 WL

3924255, at *6–7 (holding that law of the case doctrine did not apply because "the [c]ourt ha[d]

not yet decided [the] claim"); *Steinfield v. Marks*, No. 96-CV-552, 1997 WL 563340, at *3

(S.D.N.Y. Sept. 8, 1997) (dismissing only those claims which did not contain new factual

allegations as barred by law of the case doctrine); *cf. Pelman ex rel. Pelman v. McDonald's*

---

[8] For example, Plaintiff compares the Court's prior Opinion to that of a lower court that "shirked its duty" to apply established First Amendment standards and "was told by the Supreme Court to redo its homework."  (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. To Dismiss ("Pl.'s Opp'n") 2 n.4 (Dkt. No. 48) (citing *Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488, 2500–01 (2011)).)  Plaintiff also contends that a "stinging rebuke . . . delivered to the 5th Circuit" by the Supreme Court for "'fail[ing] properly to acknowledge key evidence'" on a motion for summary judgment is "[s]obering even at this pre-answer-motion juncture."  (*Id.* at 2 n.5 (second alteration in original) (quoting *Tolan v. Cotton*, 134 S. Ct. 1861, 1867–68 (2014).)

*Corp.*, 452 F. Supp. 2d 320, 327 (S.D.N.Y. 2006) (striking portions of an amended complaint that referred to previously dismissed claims under law of the case doctrine).

The only new allegations and claims in Plaintiff's Amended Complaint are (a) allegations related to the enforcement of the Computer Use Policy against alleged similarly situated individuals, and (b) Plaintiff's *Lawrence*-based decisional autonomy claim.[9]  Accordingly, the

---

[9] Defendants characterize Plaintiff's legal arguments that address the Court's prior Opinion, and particularly Plaintiff's Opposition, as a "belated motion for reconsideration." (Defs.' Reply Mem. of Law in Supp. of Defs.' Mot. To Dismiss 1 (Dkt. No. 49) (footnote omitted).)  While not obligated to do so, the Court has considered the few legal arguments that Plaintiff raised in his Amended Complaint, as well as those raised in his Opposition, and finds that none have any effect on the Court's prior holdings.

For example, Plaintiff cites *Roman v. Cornell University*, 53 F. Supp. 2d 223 (N.D.N.Y. 1999), for the proposition that Defendants' withholding of his accumulated leave was a retaliatory adverse employment action, even though it occurred after he had resigned.  (Am. Compl. 34 (citing *Roman*, 53 F. Supp. 2d at 246).)  This case is inapposite, however, because unlike in the instant case, the *Roman* plaintiff's claims were not based on the FCA.  *Roman*, 53 F. Supp. 2d at 232.  As this Court previously found, the FCA does not provide a remedy for post-employment retaliation.  *See Weslowski*, 14 F. Supp. 3d at 306 (citing 31 U.S.C. § 3730(h)(1) (providing a cause of action only for retaliation against an "employee, contractor or agent")); *Master v. LHC Grp. Inc.*, No. 07-CV-1117, 2013 WL 786357, at *7 (W.D. La. Mar. 1, 2013) (holding that "the FCA does not provide a remedy for post-employment retaliation," noting that "all courts to have addressed this issue have" come to the same conclusion, and collecting cases)).

Plaintiff also cites *Reyes v. Keane*, 90 F.3d 676 (2d Cir. 1996), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320, 336 (1997), *as recognized in Jones v. Smith*, 720 F.3d 142, 145 (2d Cir. 2013), for the proposition that it remains an open question "whether a new limitations period [can] be applied to a claim filed after the effective date of [a] new statute without affording a plaintiff an opportunity to comply with the new time period."  (Am. Compl. 3 (citing *Reyes*, 90 F.3d at 679); *see also* Pl.'s Opp'n 12, 16 (citing *Reyes*).)  This case is unpersuasive because it concerned the statute of limitations governing habeas petitions, where Congress changed the triggering event for the limitations period such that there was a risk of "cut[ting] off access to federal courts by state prisoners who lacked notice of the new limitations period."  *Reyes*, 90 F.3d at 679.  No such potential change in the limitations period occurred here, *see Weslowski*, 14 F. Supp. 3d at 302, nor is the impact of a change on prospective FCA claimants as great as that on habeas petitioners.  Further, the Court previously considered the question of whether the newly-enacted limitations period at issue could be applied to Plaintiff's claim, and answered that question in the affirmative based largely on the same case that the *Reyes* court cites for the proposition that Plaintiff identifies: *Vernon v. Cassadaga Valley Cent. Sch. Dist.*, 49 F.3d 886 (2d Cir. 1995).  *See Weslowski*, 14 F. Supp. 3d at 302–03.

Court will consider Plaintiff's § 1983 Equal Protection Claim again, and his *Lawrence* claim for the first time.  The Court will also revisit Plaintiff's § 1985 and state law claims because their survival is contingent on the merit of these other claims.

By contrast, because Plaintiff advances no new allegations addressing the deficiencies the Court identified in his other claims, the Court dismisses them for the same reasons stated in its March 31, 2014 Opinion.  Plaintiff's FCA claims are dismissed because they are untimely and fail to state a claim, and Plaintiff's § 1983 First Amendment and procedural due process claims are likewise dismissed for failure to state a claim.  *See Weslowski*, 14 F. Supp. 3d at 306, 312–17.[10]

---

[10] Of note, in his Opposition, Plaintiff argues that "'sex' [is] [i]ndisputably a '[m]atter of [p]ublic [c]oncern."  (Pl.'s Opp'n 2.)  While Plaintiff cites several cases for this proposition, none addresses what type of speech constitutes a matter of public concern, nor does any suggest that non-expressive activity—in this case, accessing sexually explicit websites—is such speech. (*See id.* at 2–4 & nn. 6–7 (citing *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245 (2002) ("It is also well established that speech may not be prohibited because concerns subjects offending our sensibilities."); *Reno v. ACLU*, 521 U.S. 844, 875 (1997) ("[T]he level of discourse reaching a mailbox simply cannot be limited to that which would be suitable for a sandbox." (internal quotation marks omitted)); *Sable Commc'ns of Calif., Inc. v. FCC*, 492 U.S. 115, 126 (1989) ("Sexual expression which is indecent but not obscene is protected by the First Amendment."); *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 74 (1983) (holding that a blanket prohibition on mailing of contraceptive advertisements violated the First Amendment); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978) (noting that that First Amendment is designed to "afford[] the public access to discussion, debate, and the dissemination of information and ideas"); *Jacobellis v. Ohio*, 378 U.S. 184, 195–96 (1964) (holding that, because the film at issue was not obscene, it was "expression that is protected by the Constitution"); *Roth v. United States*, 354 U.S. 476, 487 (1957) (noting that sex "is one of the vital problems of human interest and public concern"); *Butler v. Michigan*, 352 U.S. 380, 383–84 (1957) (finding First Amendment right to sell sexually explicit material)).)  Because Plaintiff alleges only that he accessed pornographic websites, the Court previously held that his allegations did not "implicate speech on a matter of public concern."  *See Weslowski*, 14 F. Supp. 3d at 313.  Put another way, while the topic of sex may well be a matter of public concern, Plaintiff's conduct was not addressed to the public's interest.  Rather, it was only Plaintiff's interest in viewing pornography at the workplace that allegedly led Defendants to terminate him.  Thus, Plaintiff's conduct was not the type of protected speech that could have shielded him from workplace rules.  Plaintiff makes no additional allegations in his Amended Complaint that suggest the Court should revisit this ruling.

15

### 2.   Section 1983 Equal Protection Claim

The Court previously held that Plaintiff failed to state a "class-of-one" claim because the theory has no application in the public employment context. *Weslowski*, 14 F. Supp. 3d at 318. The Court does not disturb such finding here, but rather revisits its holding that Plaintiff failed to state a claim that he was denied Equal Protection because he was discriminated against on the basis of his membership in a protected class. *See id.* at 320–21. The Court laid out the requirements for stating such a claim as follows:

> To state a claim for discriminatory discharge under a protected-class theory, a plaintiff must allege "(1) that he belongs to a protected class; (2) that he was performing his duties satisfactorily; (3) that he was discharged; and (4) that his discharge occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in that class." *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir. 1994); *see also Chick v. Cnty. of Suffolk,* 546 F. App'x 58, 58 (2d Cir. 2013) (applying this test to affirm a district court's grant of a motion to dismiss a § 1983 Equal Protection claim alleging discriminatory discharge and hostile work environment). Moreover, for the purposes of this analysis, "the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII [of the Civil Rights Act of 1964] are also applicable to claims of discrimination in employment in violation of . . . the Equal Protection Clause." *Patterson v. Cnty. of Oneida, N.Y.,* 375 F.3d 206, 225 (2d Cir. 2004).

*Weslowski*, 14 F. Supp. 3d at 318. Applying this standard, the Court found that Plaintiff had failed to "plead facts giving rise to an inference of discrimination on the basis of his membership in a protected class" because the alleged undisciplined violations of Plaintiffs' co-workers were not of "comparable seriousness" to Plaintiff's viewing of sexually explicit material, and that Plaintiff otherwise failed to allege that "any particular employee" used County computers to access such material. *Id.* at 318–21 (internal quotation marks omitted). Therefore, to survive the instant Motion, Plaintiff must plead that individuals with whom he is "similarly situated in all material respects," *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 6r (2d Cir. 1997), went undisciplined when engaged in conduct "comparabl[y] serious[]" to his viewing of sexually explicit material, *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000); *see also*

16

*Glenwright v. Xerox Corp.,* 832 F. Supp. 2d 268, 275 (W.D.N.Y. 2011) (finding that the

plaintiffs, who were terminated for using work computers to store, view, and transmit

pornographic material, failed to identify similarly situated employees where the identified

employees violated company computer-usage policies regarding pornographic material but the

violations were less "serious" and there were "mitigating circumstances distinguishing [the]

conduct and the various levels of discipline"); *Marro v. Nicholson,* No. 06–CV–6644, 2008 WL

699506, at *10 (E.D.N.Y. Mar. 12, 2008) (holding that "employees that generally misuse [a]

computer are [not] similarly situated to those who use a computer in connection with sexually

explicit or pornographic material"); *Trnka v. Biotel Inc.,* No. 07–CV–1206, 2008 WL 108995, at

*4 (D. Minn. Jan. 9, 2008) ("[The plaintiff] . . . argues that other employees used company e-

mail for personal use and to distribute jokes, but that those employees were not

terminated . . . . Yet, [the plaintiff's] employment was terminated not only because she used e-

mail to send jokes and personal messages, but also because she sent *sexually inappropriate*

messages from her work computer.  She has proffered no evidence indicating that other

employees were using their work e-mail to send sexually explicit messages.  Accordingly, she

has failed to identify any other employees who were 'similarly situated' to her.").

As discussed above, Plaintiff does allege in his Amended Complaint that "other similarly

situated employees" did not face discipline after violating the Computer Use Policy, and that

some such employees accessed sexually explicit material, though Plaintiff does not specifically

identify who did so, or what, exactly, those individuals accessed.  (*See* Am. Compl. 7–9.)[11]

---

[11] Of note, while Plaintiff may be a member of a protected class by virtue of his sexual
orientation, (*see* Pl.'s Opp'n 21–25), Plaintiff has failed to link his discussion of comparators to
allegations about his sexual orientation beyond a conclusory allegation of discriminatory intent,
(*see id.* at 22–23).  For example, Plaintiff does not allege that other employees were allowed to
access heterosexual explicit content, that the employees who were allegedly not disciplined for

Plaintiff further provides the initials of sixteen employees—seven attorneys, two paralegals, and seven "secretaries/assistants"—whom Plaintiff alleges were similarly situated "in all material respects," including in their disciplinary history and professional competence, yet were not disciplined for violating the Computer Use Policy.  (*See id.* ¶¶ 32A(4)(b)–(c), 32C(1)–(2).)

Plaintiff also alleges that while "adult/sexually explicit material" is not any more serious than other restricted content listed under the same heading of the Computer Use Policy, and is only first on that list because the list is alphabetized, (*id.* ¶ 32A(4)(a)), some of the aforementioned violations committed by his co-workers were "much more serious" than those he committed, (*id.* ¶ 32(a).)  In particular, Plaintiff claims that three similarly situated employees (other than not being "gay male[s]")—TS, MOC, and KD—conducted a private "outside practice[] of the law for their own profit," which Plaintiff contends is a "more serious" violation of the Computer Use Policy because personal business is listed under a separate heading.  (*Id.* ¶¶ 32(a), 32B(1)–(2).)  Plaintiff also implies, more generally, that similarly situated employees committed more serious violations because, unlike Plaintiff, they "store[d] and sen[t] to others" material from the Computer Use Policy's restricted categories.  (*Id.* ¶ 32A(4)(c).)

While the Equal Protection claim allegations in Plaintiff's Amended Complaint are more detailed than those in his original Complaint, Plaintiff still fails to adequately allege that similarly situated employees committed equally serious conduct for which they were not disciplined.  First, the Court is unpersuaded that the alphabetical listing of restricted categories suggests that the categories are all of equivalent seriousness.  Having reviewed the list, (*see id.* ¶ 32A(4)(a)), it is clear that the restricted categories vary widely in their seriousness.  For

---

accessing sexually explicit content were of a different sexual orientation, or more generally that all those who violated the Computer Use Policy with impunity were of a different sexual orientation.

example, "Shopping" online or computer use related to "Food and Drink" can hardly be considered equivalent to "Hate Speech" or "Violence."  The Court therefore declines to depart from its previous ruling: employers may regard the viewing of sexually explicit material as being more serious than many of the other listed violations.  *Weslowski*, 14 F. Supp. 3d at 319–20 (citing Compl. ¶ 32(a)).)  That Plaintiff does not share his employer's view does not amount to stating an Equal Protection claim against Defendants.

Second, while Plaintiff implies that some of the sixteen employees he named also accessed sexually explicit material, this allegation consists only of a claim that a "fair reading" of Freedom of Information Law ("FOIL") materials *suggests* that other employees accessed sexually explicit material, (Am. Compl. 8), and a contention that the sixteen employees accessed and shared material in "many, if not nearly all" of the restricted categories, without identifying the specific categories, (*id.* ¶ 32A(4)(c)).[12]  This allegation, without more, is insufficient, as Plaintiff is merely speculating about the conduct of his co-workers, rather than specifically alleging that they also accessed sexually explicit material.  *See Henry v. NYC Health & Hosp. Corp.*, No. 13-CV-6909, 2014 WL 957074, at *10–11 (S.D.N.Y. Mar. 10, 2014) (dismissing gender discrimination claim because, inter alia, the plaintiff's "allegations of gender-based disparate treatment [were] conclusory"); *Thompson v. New York City*, No. 12-CV-8034, 2013 WL 6409326, at *9 (S.D.N.Y. Dec. 9, 2013) (dismissing racial and gender discrimination claim,

---

[12] The County asserts that Plaintiff "bases his claim that there must be similarly situated comparators" on the FOIL response attached as Exhibit G to the Declaration of Robert B. Weissman.  (*See* Weissman Decl. ¶ 3.)  Exhibit G includes only an email response to Plaintiff's initial FOIL request, which outlines which records the County would produce, rather than the records themselves.  (*See id.* Ex. G.)  Therefore, while the materials in Exhibit G are likely incorporated into the Complaint by reference, and on their own do not provide a basis for alleging that other employees are similarly situated, it is not clear to the Court that Plaintiff relied only on the FOIL response email in formulating this portion of his Amended Complaint.

noting that the plaintiff's "vague and conclusory" allegations were insufficient to show that he and his proposed comparators were "similarly situated in all material respects") (internal quotation marks omitted); *Guo Hua Ke v. Morton*, No. 10-CV-8671, 2012 WL 4715211, at *11 (S.D.N.Y. Sept. 30, 2012) (explaining that "vague, speculative, and conclusory allegations are not sufficient to state a claim for a violation of equal protection"); *see also Weslowski*, 14 F. Supp. 3d at 320 (dismissing claim because, among other reasons, "the Complaint [did] not identify any particular employee who used work computers to access 'adult/sexually explicit' material").

Third, while some of the other restricted categories of behavior in the Computer Use policy—e.g., "Hacking" or "Criminal" behavior—could be viewed as of equal or greater seriousness to Plaintiff's apparent transgressions, the Court need not determine at this stage how serious such violations are because the only specific violation that Plaintiff alleges is the aforementioned use of County computers for a personal law practice.  While conducting personal, for-profit, law firm business on County computers may well be inappropriate behavior, the Court is unpersuaded by Plaintiff's argument that the inclusion of "personal business" in a separate category renders violations of that portion of the Computer Use Policy more serious than others.  Indeed, Plaintiff also alleges that "game playing/gambling" and "wasteful use of network resources" are also listed under separate headings, (Am. Compl. ¶ 32B(1)), and the Court finds it hard to fathom that employers might view a game of solitaire as more serious than viewing pornography in the workplace.

Fourth, as Defendants point out, even if some of the alleged violations of the Computer Use Policy were as serious as Plaintiff's conduct, Plaintiff fails to allege that Zugibe or Fortunato were aware of the violations such that the other offending employees could have been

disciplined.  (Defs.' Mem. of Law in Supp. of Defs.' Mot. To Dismiss ("Defs.' Mem.") 20 (Dkt.

No. 45).)  The absence of such an allegation dooms Plaintiff's claim from the start.  *See*

*LaTrieste Rest. v. Village of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999) (explaining that a

plaintiff "ordinarily cannot establish an equal protection violation unless it shows that the

[defendant] consciously applied a different standard of enforcement to similarly situated

[individuals].");  *Aiello v. Stamford Hospital*, No. 09-CV-1161, 2011 WL 3439459, at *16 (D.

Conn. Aug. 8, 2011) ("Since management was not aware that each of [the comparators] had

[engaged in the same conduct for which the plaintiff was reprimanded and ultimately

terminated], management could not have engaged in preferential treatment with respect to such

individuals.");  *Hirschberg v. Bank of Am., N.A.*, 754 F. Supp. 2d 500, 516 (E.D.N.Y. 2010)

(granting summary judgment to the defendant on an employment discrimination claim because,

inter alia, the "[p]laintiff [had] not produced any evidence that the [defendant] knew or should

have known that any of [the] comparators" had engaged in the same activity for which the

plaintiff was terminated).  Therefore, Plaintiff has failed to allege that similarly situated

employees committed equally serious violations of the Computer Use Policy for which they were

consciously not disciplined by Defendants, and Plaintiff's § 1983 Equal Protection claim is

dismissed on this basis.

Even if Plaintiff made sufficient allegations in the Amended Complaint, however, his

§ 1983 Equal Protection claim is also time-barred.  (*See* Defs.' Mem. 16–17.)  For § 1983

actions, "the applicable limitations period is found in the general or residual state statute of

limitations for personal injury actions." *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.

2002) (brackets and internal quotation marks omitted).  "In New York, the personal injury statute

of limitations that applies to [§] 1983 actions is three years." *Fairley v. Collins*, No. 09-CV-6894, 2011 WL 1002422, at *3 (S.D.N.Y Mar. 15, 2011); *see also* N.Y. C.P.L.R. § 214(5).

In a § 1983 employment discrimination case concerning forced resignation, the claim accrues on "the date when [the plaintiff] g[ives] definite notice of [his or] her intention to retire." *Flaherty v. Metromail Corp.*, 235 F.3d 133, 138 (2d Cir. 2000); *see also Krachenfels v. N. Shore Long Is. Jewish Health Sys.*, No. 13-CV-243, 2014 WL 3867560, at *11 (E.D.N.Y. July 29, 2014) (same).  While Plaintiff's resignation took effect on December 4, 2009, (*see* Am. Compl. ¶ 30(d)), Plaintiff agreed to resign, and delivered his resignation letter, without any included conditions, on November 24, 2009, (*id.* ¶ 30(e); Resignation Letter).  Therefore, as the Court previously held, the November 24 resignation later constituted notice of Plaintiff's resignation, and Plaintiff's § 1983 claim accrued on that date.  *Weslowski*, 14 F. Supp. 3d at 303; *see also Shockley v. Vt. State Colls.*, 793 F.2d 478, 481–82 (2d Cir. 1986) (noting that "[g]enerally, the timeliness of a discrimination claim is measured form the date the claimant receives notice of the allegedly discriminatory act, not from the date the decision takes effect").  Accordingly, because Plaintiff filed this action on December 3, 2012, more than three years after he delivered his resignation letter, his § 1983 claim also is dismissed as untimely.

### 3.  Section 1985 Claim

As in the original Complaint, Plaintiff alleges a claim under 42 U.S.C. § 1985, which establishes a cause of action against parties who conspire to deprive a person of Equal Protection.  *See* 42 U.S.C. § 1985(3).  The claim is "entirely dependent on the allegations in [Plaintiff's] § 1983 claims."  *See Weslowski*, 14 F. Supp. 3d at 321.  (*See also* Am. Compl. ¶ 37.)  Therefore, because the Court has already dismissed Plaintiff's § 1983 claims, his § 1985 claim based on a conspiracy to deprive Plaintiff of those rights is also without merit.  Additionally, by

operation of the intracorporate conspiracy doctrine, "the officers, agents, and employees of a single corporate entity, each acting within the scope of his employment, are legally incapable of conspiring together." *Reich v. Lopez*, 38 F. Supp. 3d 436, 463 (S.D.N.Y. 2014) (brackets and internal quotation marks omitted); *see also Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008) (same).  Because Zugibe and Fortunato are both employees of the same department of County government, and because Plaintiff has not alleged that they acted outside the scope of their employment, they cannot conspire with one another so as to violate § 1985.  *See Guichard v. Town of Brookhaven*, 26 F. Supp. 3d 219, 228 (E.D.N.Y. 2014) (dismissing § 1985 claim targeting "actions taken by the [defendant] [t]own and its employees" because it was barred by the intracorporate conspiracy doctrine).  For these reasons, Plaintiff's § 1985 claim is dismissed.

### 4.   "Decisional Autonomy/Liberty" Claim

In his Amended Complaint, Plaintiff includes a separate "DECISIONAL AUTONOMY/'LIBERTY' INTERESTS" claim.  (Am. Compl. 60.)  While the Court has already rejected Plaintiff's First Amendment claim, Plaintiff argues that Defendants' decision to "routinely ignore[]," and failure to "consistently [and] evenhandedly" enforce, the Computer Use Policy "established a right" to use County computers and Internet "for otherwise prohibited purposes," e.g., accessing sexually explicit material, without "any adverse employment consequences."  (*Id*. ¶¶ 42–43.)  Plaintiff further argues that once this right was established, it became a "long-established interest[]" protected by the Fourteenth Amendment, and that Defendants violated that right by conditioning his employment on him not exercising it.  (*Id*. ¶ 44; Pl.'s Mem. of Law in Opp'n to Defs.' Mot. To Dismiss 24 (Dkt. No. 48).)

The primary case that Plaintiff cites for this claim is *Lawrence v. Texas*.  In *Lawrence*, the Court did not interpret the Fourteenth Amendment, as Plaintiff suggests, to create an

amorphous, unlimited zone of personal liberty.  Rather, the case stands for the proposition that consenting adults have a liberty interest in sexual activity conducted *in the privacy of their own home*.  *See Lawrence*, 539 U.S. at 562 ("Liberty protects the person from unwarranted government intrusions into a dwelling or other private places."); *id.* at 567 ("[A]dults may choose to enter . . . [sexual] relationship[s] in the confines of their homes . . . ."); *accord Cook v. Gates*, 528 F.3d 42, 53 (1st Cir. 2008) ("*Lawrence* recognized that adults maintain a protected liberty interest to engage in certain consensual sexual intimacy in the home." (internal quotation marks omitted)); *Lowe v. Swanson*, 639 F. Supp. 2d 857, 865 (N.D. Ohio 2009) (noting that *Lawrence* found that "'criminal convictions for adult consensual intimacy in the home violate[d] . . . liberty and privacy [interests] protected by the Due Process Clause of the Fourteenth Amendment'" (quoting *Lawrence*, 539 U.S. at 564)), *aff'd* 663 F.3d 658 (6th Cir. 2011); *Albright v. Morton*, 321 F. Supp. 2d 130, 137 (D. Mass. 2004) (describing *Lawrence* as finding that "individuals have a right to privacy to engage in sexual acts in their homes"), *aff'd sub nom. Amrak Prods., Inc. v. Morton*, 410 F.3d 69 (1st Cir. 2005).  *Lawrence* therefore does not stand for the proposition that individuals have a right to access sexually explicit material in the workplace.  *Cf. United States v. Little*, No. 07-CR-170, 2008 WL 151875, at *1 (M.D. Fla. Jan. 16, 2008) (noting that *Lawrence* "addresses sexual conduct between two consenting adults in the privacy of the home," and "provides no support for [the] argument that all federal obscenity statutes are unconstitutional"), *aff'd*, 365 F. App'x 159 (11th Cir. 2010).  As Defendants point out, (Defs.' Mem. 23), "[t]he Supreme Court [has] rejected [the] argument that the constitutional protection for sexual conduct in the home or marital bedroom, including watching obscene movies by consenting adults, extends to a public place . . . ."  *Fiore v. Town of Whitestown*, No. 07-CV-797, 2010 WL 4513422, at *5 (N.D.N.Y Nov. 2, 2010) (citing *Paris*

*Adult Theatre I v. Slaton*, 413 U.S. 49, 65 (1973)).  It follows, therefore, that the constitutional

protections that apply in the privacy of one's home do not necessarily extend to the workplace.

Indeed, "[w]hen a citizen enters government service, the citizen by necessity must accept certain

limitations on his or her freedom."  *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *see also id.*

("Government employers . . . need a significant degree of control over their

employees' . . . actions; without it, there would be little chance for the efficient provision of

public services.").[13]  Accordingly, the Court finds that *Lawrence* does not create a right, distinct

from Plaintiff's First Amendment rights that the Court has already considered, to access sexually

explicit material while at work.[14]  To be blunt, Plaintiff has cited *no authority* to support his

claimed right to download or watch pornography in the workplace.

---

[13] As Plaintiff points out, public employees do, of course, still retain their constitutional rights.  (*See* Pl.'s Opp'n 23 n.53 (citing *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 605 (2008) ("Of course, that is not to say that the Equal Protection Clause, like other constitutional provisions, does not apply to public employers.")).)  However, there is no authority for Plaintiff's claimed right here.

[14] In his Opposition, Plaintiff also cites *Agency for International Development v. Alliance for Open Society Int'l, Inc.,* 133 S. Ct. 2321 (2013) for its reference, in dicta, to Justice Jackson's decades-old statement that "'no official, high or petty, can prescribe what shall be orthodox.'" (Pl.'s Opp'n 24–24 (quoting *Agency for Int'l Development*, 133 S. Ct. at 2332).)  Plaintiff also makes note of the Supreme Court's citation of the Second Circuit's prior decision in that case, in which it held that "'the government may not place a condition on the receipt of a benefit or subsidy that infringes upon the recipient's constitutionally protected rights.'"  (*Id.* at 25 (quoting *Agency for Int'l Development*, 133 S. Ct. at 2327).)  *See also Alliance for Open Soc'y Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 231 (2d Cir. 2011).
     *Agency for International Development* concerned a First Amendment challenge to a condition attached to Congressional funding to combat the spread of HIV/AIDS that no such funds "may be used by an organization that does not have a policy explicitly opposing prostitution and sex trafficking"  *Agency for Int'l Development*, 133 S. Ct. at 2324 (internal quotation marks omitted).  Accordingly, the fact that the second quote is included in a portion of the opinion that merely summarizes the history of the case notwithstanding, the Court has already found that the rights at issue in *Agency for International Development*—First Amendment rights—are not implicated by Defendants' actions in this case.  Moreover, *Agency for International Development* does not support Plaintiff's theory that Defendants' alleged failure to enforce the Computer Use Policy gave rise to a right to violate it.

*Lawrence* likewise does not stand for the proposition that failure to rigorously enforce a policy restricting access to sexually explicit material establishes a right to access this material, such that the dismissal of an employee engaging in such actions would implicate his personal liberty.  Plaintiff cites no other case law, in his Amended Complaint or Opposition, in support of his novel theory.  Therefore, the Court finds that Defendants' conduct has not established a right for Plaintiff to view sexually explicit material while at work, and Plaintiff's *Lawrence*-based claim is dismissed.

### 5.   State Law Claims

Because the Court again has dismissed all of Plaintiff's federal claims, the claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims arising under common law and New York's Human Rights Law, N.Y. Exec. Law § 296(1)(a).  *See* 28 U.S.C. § 1367(c)(3); *Matican v. City of New York*, 524 F.3d 151, 154–55 (2d Cir. 2008) ("[I]f [the plaintiff] has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims.").  Accordingly, Plaintiff's state law claims are dismissed.

III.  Conclusion

For the foregoing reasons, the Court grants Defendants' Motion To Dismiss in its entirety, and dismisses the Complaint with prejudice.  The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 40), and to close the case.

SO ORDERED.

Dated:        March 3l, 2015
              White Plains, New York

                                          KENNETH M. KARAS
                                          UNITED STATES DISTRICT JUDGE

27